Ruffin, C. J.
 

 Upon the first question the Court is of opinion, that the turpentine was the subject of larceny. We learn from a former special verdict, which appears in the record, and from various other sources — including our own observation — that the mode of making turpentine is this: an excavation, commonly called a box, is made in the body of the tree near the ground,"info which the turpentine runs from the tree above : and, in order to produce a flow of the gum or to promote it more freen ly, the tree is occasionally scored above the box with a sharp iron instrument, called a round-shave, and the scoring is done in such a manner as to direct the current of the descending sap into the box: and the turpentine is then collected or dipped out of the box from time to time as it becomes full, during fhe season of gathering, which ordinarily begins in March and ends in October. The scoring often extends up the body of the tree to the height of ten or fifteen feet, and in its descent a part of the turpentine generally adheres to the tree and becomes hard, while that, which remains liquid, continues its course downwards until it drips in the box, where it remains until collected, and put into casks for use,or. market. Such being the process in this business, it seems clear, that turpentine, whenimthe boxes in a state to be dipped up,^ is personalty. It no longer forms a part of the tree, but i it exists separate from the tree, and has been separated by a process of laborjaiid cultivation. If, like the sap of the sugar maple, its flow were directed into a vessel set
 
 *72
 
 on the ground near the tree, no one would doubt its being seyered from the realty. Now, thts'is the same in substance. For the box, thongh in the tree, is but a more convenient receptacle for the turpentine, after it has been extracted or has been made to exude from the pores, which contained it, while _ in the..tree, as..a part of it.— When it ceases to be a part of the tree, it necessarily.becomes a. chattel.
 

 Upon the other question, however, it is the opinion of the Court, that it is a material part of the description of the turpentine, that when taken it was in barrels. . That would not be so, if the term “ barrel” imported or could be referred to quantity only ; for, one may undoubtedly be convicted, when the evidence shows a larceny of more or less in measure or weight than is charged in the indictment. But a “barrel” of turpentine, or a “barrel”- of flour, or a “hogshead” of tobacco, in agricultural and mercantile parlance, as also in the Inspection laws, means
 
 prima facie,
 
 not a certain quantity merely, but, further, a certain state of the article : namely, that it is in a cask. The statute exacts, for example, that every “barrel of tui’pentine” shall contain thirty-two gallons, and be in good and sufficient casks made of staves of certain dimensions. “A barrel of turpentine” is in a degree a term of art in trade and in the law : and when one says, he has so many barrels of turpentine, he is universally understood to mean that number of casks of the statute size, &c., containing turpentine, and, consequently, that the casks, as well as the turpentine, are his. “A barrel” of turpentine or flour is, thus, one thing, constituted by. both the cask and its contents ; and it is known so.to be by that description. Upon that point, therefore, the judgment was properly given for the prisoner.
 

 Per Curxam. Judgment affirmed.