STATE OF NORTH CAROLINA v. GREGORY A. COUSIN

No. 51

(Filed 21 December 1976)

1. Homicide § 20; Criminal Law § 83— felony murder — recovery of pistol attributed to defendant's wife — admissibility

The trial court in a felony murder prosecution did not err in allowing into evidence the pistol used in the murder and testimony of the owner of the pistol which incriminated defendant, though officers first learned about the pistol and its whereabouts from defendant's wife, since G.S. 8-57 providing that no spouse shall be compellable to disclose any confidential communication made by one to the other during their marriage is an evidentiary rule and applies to a spouse testifying or to the admission of a statement by a spouse into evidence.

2. Homicide § 16— felony murder — dying declarations of victim — admissibility

The trial court in a felony murder prosecution did not err in allowing into evidence dying declarations made by one of the victims, since the evidence tended to show that at the time the remarks in question were made, the victim was in great pain, he was writhing about on the floor and crying for help, and he was experiencing difficulty breathing and was bleeding from gunshot wounds in the head and stomach; moreover, statements of the victim made immediately after the shooting were admissible as spontaneous utterances.

3. Criminal Law § 91— motion for continuance — denial proper

The trial court did not abuse its discretion in denying defendant's motion for continuance to allow him to prepare for an in-court identification of his co-defendant who was tried in a separate trial.

4. Homicide § 21— convenience store employee — felony murder — sufficiency of evidence

Evidence was sufficient to be submitted to the jury in a prosecution for felony murder where it tended to show that two people were

found fatally injured in the storeroom of a convenience store; a sum of money had been taken from the floor safe of the store; defendant was seen leaving the store in a yellow Maverick automobile just prior to discovery of the injured persons; one of the victims told witnesses that "two black dudes" were responsible; defendant owned a yellow Maverick automobile with the same license plate number as the car seen leaving the scene; defendant had possession of a gun during the time of the robbery which later proved to be the murder weapon; and one State's witness testified concerning an admission by defendant that he robbed the convenience store.

5. **Homicide §§ 12, 31— homicide statute providing for death penalty — death penalty invalidated — indictment and trial under statute proper**

Though the U. S. Supreme Court invalidated the death penalty provisions of G.S. 14-17 under which defendant was indicted, convicted and sentenced to death, there was no error in failing to dismiss the indictments against defendant, since the Supreme Court could substitute life imprisonment for the death penalty.

DEFENDANT appeals pursuant to G.S. 7A-27(a) from judgment of *Herring, J.*, entered at the 19 January 1976 Criminal Session, CUMBERLAND County Superior Court.

On indictments, proper in form, defendant was charged and found guilty of two counts of first degree murder and one of armed robbery. The death sentence was imposed for the murder convictions and, as was proper, judgment was arrested for the armed robbery conviction because the murder indictments were tried on the theory of felony murder.

The evidence for the State tended to show the following:

Deceased Larry Lovett left for work around 6 a.m. on 7 August 1975. He was employed by McArthur Road Seven-Eleven Store in Fayetteville and was familiar with the fact that $125.00 was always placed in the floor safe when the store closed at night. He had been instructed not to resist a robbery and did not own or carry a gun.

Just before 7 a.m. on the same morning, deceased Norma Ehrhart left her home to pick up a few groceries at the Seven-Eleven Store. About the same hour, Clarence Hilliard and Janice Whitten left for work together and planned to stop at the same store to pick up some cigarettes. They pulled up outside the store at 7:10 a.m. Both of them noticed a yellow Maverick automobile parked alongside their car, and shortly thereafter saw a light-complexioned black man come out of the store and head for the Maverick. Janice Whitten and Clarence Hilliard later identified the defendant as this man.

Clarence Hilliard waited in the car while Janice Whitten got out and headed for the double-door entrance-way. As she reached the doors, she observed a dark-complexioned black man come out of the store and get in the passenger side of the Maverick. Janice Whitten later identified this man as the co-defendant, Bobby Bowden.

Janice Whitten walked into the store and noticed no clerks in sight and that it was very quiet. She waited awhile and another customer came in. While she was talking to the other customer, they heard muffled, moaning sounds coming from the back storage room. They went to the storage room door and opened it. There Janice Whitten saw Larry Lovett, lying on his left side, bleeding from his head and stomach. Close by lay Norma Ehrhart, also bleeding. Both had been shot and were breathing faintly. Janice Whitten ran to the front of the store to call the police and summon Clarence Hilliard. When she came back to the storeroom, she bent over Larry Lovett to inquire about his condition. He responded that he was hurt in "My head and my gut . . . it just happened. Didn't you see them?" By this time Clarence Hilliard was in the storeroom asking Larry Lovett what happened. Larry replied, "It just happened. Didn't you see them two black dudes?"

Soon thereafter, officers from the Sheriff's department arrived. Norma Ehrhart appeared to be dead and Larry Lovett was still struggling. Ambulances took them to the hospital where both were pronounced dead on arrival. It was determined that $124.89 had been taken from the floor safe. Janice Whitten and Clarence Hilliard told the officers what they had seen in the store but did not mention the two black males they had seen leaving in the yellow Maverick. Later the same day when they heard of the death of Larry Lovett, they went to the Law Enforcement Center and reported that they had seen two black men leaving the scene. Four days later, they returned to the Center and each identified the defendant separately from photographs.

The next day, 12 August 1975, a lineup was held in which the defendant was one of six persons shown to Janice Whitten and Clarence Hilliard. They observed the lineup separately, but Janice Whitten was unable to identify the defendant; in fact, she identified another individual. Clarence Hilliard, however, did select the defendant.

Sometime before 7 August 1975, Martha Ann Mack and her boyfriend, Rodney Harris, had gone with the defendant and Bobby Bowden in defendant's yellow Maverick to a bank in Fayetteville for business purposes. After Martha Ann Mack and, Rodney Harris had gotten out of the vehicle, Martha noticed that Harris had her pistol in his pocket. She suggested that he not carry it into the bank so he returned with the gun to the car. The day before 7 August 1975, Martha Ann Mack went to the hospital to see her boyfriend, Rodney Harris. When she inquired about her pistol, he told her he had left it in defendant's yellow Maverick.

On the evening of 7 August 1975, the defendant and Bobby Bowden went to Martha Ann Mack's trailer to return the gun. It was later determined that bullets from this gun killed Larry Lovett and Norma Ehrhart. While at the trailer, the defendant told Martha Ann Mack in the presence of Bobby Bowden that they were responsible for the Seven-Eleven robbery and murders. She questioned his statement so defendant suggested that she listen to the 11 p.m. news which appeared on television shortly thereafter, and this was done.

The defendant and Bobby Bowden were arrested at defendant's trailer in the early morning hours of 12 August 1975. As a result of information provided by Alice Cousin, the defendant's wife, officers were able to secure the pistol from Martha Ann Mack's trailer the same morning.

In December of 1975, Janice Whitten reported to the police the license plate number of the yellow Maverick seen at the Seven-Eleven Store. She testified that she remembered the numbers of the plate because she got in the habit, when she lived in Ohio, of memorizing plate numbers to use in playing the "numbers" game. The letters on the plate, HJW, she recalled because they included her initials and Clarence Hilliard's last initial. The license number described by Janice Whitten matched the license number of a Maverick automobile in defendant's yard on the night of his arrest.

Defendant's evidence tended to show:

City-County identification records and photographs of the men who appeared in the 12 August 1975 lineup with defendant revealed that their complexions ranged from medium to dark. However, defendant's own complexion in the photograph on file

appeared to be medium rather than light, and defendant's witness admitted that the photographs of individuals varied depending on the development process.

When recalled to the stand, Clarence Hilliard testified that he remembered the license plate on the Maverick being dirty. He recollected Janice Whitten's mentioning the letters of the license plate shortly after the robbery but had no further conversations with her about the license number. Hilliard confirmed that Janice Whitten got her ideas for betting from numbers she observed on license plates.

The defendant did not testify in his own behalf.

The co-defendant, Bobby Bowden, was tried and convicted of the same offenses at the 15 December 1975 Criminal Session, Cumberland County Superior Court. On appeal of that case to our Court, we found No Error. *State v. Bowden,* 290 N.C. 702, 228 S.E. 2d 414 (1976).

Other facts necessary to the decision will be discussed in the opinion.

*Attorney General Rufus L. Edmisten by Associate Attorney Elizabeth C. Bunting for the State.*

*E. Lynn Johnson for defendant appellant.*

COPELAND, Justice.

[1] Under Assignment of Error No. 4, defendant contends the trial court erred in denying defendant's motion to suppress the pistol belonging to Martha Ann Mack and her testimony. Defendant argues that this evidence was obtained directly through a disclosure by defendant's wife of a confidential communication and was thus inadmissible under G.S. 8-57.

In the course of their investigation, officers learned that Bowden and the defendant may have been involved in the murder-robbery and that they had a gun in their possession. Based on this lead, they arrested Bowden and the defendant at defendant's trailer. Alice Cousin, defendant's wife, was present at the time and was questioned concerning the whereabouts of the gun. At first she refused to tell them anything, but later she directed them to Martha Ann Mack's trailer where they procured the gun and learned from Martha Ann Mack that the defendant had acknowledged to her his involvement in the

crime. Defendant claims his wife knew of the gun's location as a result of a confidential communication during their marriage.

G.S. 8-57 (Cum. Supp. 1975) provides in pertinent part:

> "The husband or wife of the defendant, in all criminal actions or proceedings, shall be a competent witness for the defendant, but the failure of such witness to be examined shall not be used to the prejudice of the defense. . . . No husband or wife shall be compellable to disclose any confidential communication made by one to the other during their marriage. Nothing herein shall render any spouse competent or compellable to give evidence against the other spouse in any criminal action."

Defendant apparently relies on the "fruit of the poisonous tree doctrine" in contending that the gun and Martha Ann Mack's testimony were inadmissible. His argument, which attempts to graft a Fourth Amendment search and seizure doctrine to G.S. 8-57, is novel but we believe not warranted by the language of our statute. G.S. 8-57 is an evidentiary rule and applies to a spouse testifying or to the admission of a statement by a spouse into evidence. *See* 1 Stansbury's N. C. Evidence, §§ 59, 60 (Brandis Rev. 1973); Comment, *A Survey of the North Carolina Law of Relational Privilege,* 50 N. C. L. Rev. 630, 635 (1972). In the present case, Alice Cousin, never testified nor was any statement by her admitted into evidence. This assignment of error is overruled.

[2]   Under Assignments of Error Nos. 15, 16, 17, 24, 26 and 30, defendant maintains the court erred in admitting into evidence statements made by Larry Lovett before he died. Defendant argues that for this testimony to be admissible it must fall within the dying declaration exception to the hearsay rule.

G.S. 8-51.1 (Cum. Supp. 1975) provides as follows:

> "The dying declarations of a deceased person regarding the cause or circumstances of his death shall be admissible in evidence in all civil and criminal trials and other proceedings before courts, administrative agencies and other tribunals to the same extent and for the same purpose that they might have been admissible had the deceased sur-

vived and been sworn as a witness in the proceedings, subject to proof that:

"(1)  At the time of the making of such declaration the deceased was conscious of approaching death and believed there was no hope of recovery.

"(2)  Such declaration was voluntarily made."

The record discloses that Larry Lovett appeared to be in great pain, was bleeding profusely from his head and stomach, and having difficulty speaking. The record further reveals that Larry Lovett was aware of his substantial injury. Over objection, Janice Whitten testified that when she saw Larry Lovett on the floor of the storeroom he told her he had been shot in "My head and my gut." This testimony was clearly admissible as a spontaneous utterance. *State v. Bowden, supra; State v. Deck,* 285 N.C. 209, 203 S.E. 2d 830 (1974) ; 1 Stansbury's N. C. Evidence, § 164 (Brandis Rev. 1973). Defendant also objected to the admission of Larry Lovett's question to Clarence Hilliard, "Didn't you see them two black dudes?", and his statement to Deputy Sheriff Baker that "two black dudes did it."

In *State v. Bowden, supra,* we said:

"The admissibility of a declaration as a dying declaration is a question to be determined by the trial judge, and when the judge admits the declaration, his ruling is reviewable only to determine whether there is evidence tending to show facts essential to support it. [Citation omitted.] Under the new statute, the declaration must have been voluntary and made when the declarant was conscious of approaching death and without hope for recovery. It is the requirement that the declarant be aware of his impending death that has most often concerned the courts under the case law and now concerns us under the statute. We note, without deciding, that the words, 'no hope of recovery' in the statute may make the statutory exception to the hearsay rule more restrictive than existing case law. However, we believe that on the facts of this case, the declarant Larry Lovett must have believed that there was no hope for recovery. It is not necessary for the declarant to state that he perceives he is going to die. If all the circumstances, including the nature of the wound, indicate that the declarant realized death was near, this requirement of the law is

satisfied. [Citation omitted.]" *State v. Bowden, supra,* at 712, 228 S.E. 2d at 421 (1976).

The evidence shows that when Larry Lovett made the remarks in question, he was in great pain, "writhing" about on the floor, crying "Help me, please," experiencing difficulty speaking and bleeding from multiple gunshot wounds of the head and stomach regions. The wounds were of such a nature that, taken with the fact that Larry Lovett died en route to the hospital, the trial judge could justifiably conclude that the declarant Larry Lovett realized that his death was imminent and that there was no hope of recovery. *See* G.S. 8-51.1, *supra;* 1 Stansbury's N. C. Evidence, § 146 (Brandis Rev. Supp. 1976) at 151.

Moreover, as we noted in *Bowden,* the statement by Lovett to Hilliard implicating "two black dudes" is admissible as a spontaneous utterance. *State v. Bowden, supra* at 713, 228 S.E. 2d at 421 (1976). These assignments of error are without merit and overruled.

In Assignments of Error Nos. 18 and 20, defendant claims the trial court erred in permitting the in-court identification of co-defendant Bobby Bowden by witness Janice Whitten. In the earlier trial of co-defendant Bowden, defendant Cousin was similarly permitted to be identified. In that case the constitutionality of the in-court identification of a co-defendant in a defendant's separate trial was challenged and the procedure found to be permissible. For the reasons stated in *Bowden,* these assignments of error are overruled. *State v. Bowden, supra* at 710-11, 228 S.E. 2d at 419-20 (1976).

[3] In Assignment of Error No. 19, defendant asserts the court erred in denying his motion for a continuance to allow him to prepare for the in-court identification of Bobby Bowden. Defendant contends the presence of co-defendant Bowden in the courtroom for the purpose of identification was "totally unexpected" and therefore he needed time to develop impeachment evidence.

A motion for continuance being addressed to the sound discretion of the trial judge, the denial of such a motion is not reviewable absent an abuse of discretion. *State v. Miller,* 288 N.C. 582, 220 S.E. 2d 326 (1975). This rule obtains unless the motion is based on a right guaranteed by the federal or state

constitution. In such a case, the question presented is one of law and not of discretion and the decision of the lower court is reviewable. *State v. Miller, supra.*

No constitutional question is here presented. Defendant was not deprived of effective representation by counsel. From the time of counsel's appointment four months before trial up to final argument in this Court, defendant was zealously and ably defended. "[T]he fact, standing alone, that a continuance has been denied, does not constitute a denial of the constitutional right to assistance of counsel." *Avery v. Alabama,* 308 U.S. 444, 84 L.Ed. 2d 377, 60 S.Ct. 321 (1940).

As noted in *Bowden, supra,* the appearance in the courtroom of a co-defendant for the purpose of identification is neither a "legal surprise or impropriety." From the record it appears that the defendant had ample opportunity and that he availed himself of the opportunity on cross-examination and in his rebuttal to impeach witness Whitten's identification of the co-defendant. No abuse of discretion nor infringement of a constitutional right having been shown, this assignment of error is overruled.

[4] In Assignments of Error Nos. 61, 62, 64 and 65, defendant challenges the court's refusal to dismiss the case at the close of the State's evidence and at the close of all the evidence, as well as the court's charges on armed robbery and felony murder. All of these assignments are based on defendant's contention that the State failed to prove an armed robbery had taken place. We do not understand defendant to contend that the instructions on armed robbery or felony-murder were in any way deficient, only that they should not have been given. We construe these assignments as argument by defendant that a motion for nonsuit should have been granted on the charges of armed robbery and felony-murder.

On this motion for nonsuit, the question for our determination is whether there is substantial evidence of each essential element of armed robbery and of defendant's being the perpetrator. *State v. Vestal,* 278 N.C. 561, 180 S.E. 2d 755 (1971). The evidence must be considered in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn therefrom. *State v. Hunter,* 290 N.C. 556, 227 S.E. 2d 535 (1976) ; *State v. Covington,* 290 N.C. 313, 226 S.E. 2d 629 (1976).

The evidence when considered in the light most favorable to the State shows the following: (1) On the early morning of 7 August 1975, Larry Lovett and Norma Ehrhart were found fatally injured in the storeroom of the McArthur Road Seven-Eleven Store; (2) A sum of money had been taken from the floor safe of the store; (3) Defendant was seen leaving the store in a yellow Maverick automobile just prior to the discovery of the injured persons; (4) Lovett told two witnesses that "two black dudes" were responsible; (5) Defendant owned a yellow Maverick automobile with the same license plate number as the car seen leaving the scene; (6) Defendant had possession of a gun during the time of the robbery which later proved to be the murder weapon. Besides these circumstantial facts, the State introduced the damaging testimony of Martha Ann Mack who recounted defendant's admission that he robbed the Seven-Eleven Store. There was sufficient evidence of the elements of armed robbery and of defendant's role as perpetrator and no error in either the submission of the jury instructions or in the denial of defendant's various motions.

Substantially the same argument was advanced in *State v. Bowden, supra,* and there we held that a motion for nonsuit was properly overruled. We are led to the same conclusion based on the nearly identical evidence presented in this case.

Defendant assigns as Errors Nos. 7-14 statements admitted into evidence which he alleges were rank hearsay. We have reviewed the record. Certain of the challenged statements were not clearly hearsay either because the witness appeared to be testifying from his personal knowledge or because the statement was not offered to prove the matter asserted but for some other nonhearsay purpose. Other statements, though hearsay, were admissible under recognized exceptions to the hearsay rule.

We choose, however, to decide these assignments on a simpler, common ground. Assuming *arguendo* that all these statements were technically incompetent hearsay, we find that they did not prejudice the defendant and that their admission could not have affected the result. *State v. Hudson,* 281 N.C. 100, 187 S.E. 2d 756 (1972), *cert. den.,* 414 U.S. 1160, 39 L.Ed. 2d 112, 94 S.Ct. 920 (1974); *State v. Williams,* 275 N.C. 77, 165 S.E. 2d 481 (1969). Error, if any there be, was harmless and these assignments are overruled.

**[5]** Finally, defendant contends that the indictments should have been dismissed because the death penalty is unconstitutional. In *Woodson v. North Carolina*, _____ U.S. _____, 49 L.Ed. 2d 944, 96 S.Ct. 2978 (1976), the United States Supreme Court invalidated the death penalty provisions of G.S. 14-17 (Cum. Supp. 1975) under which defendant was indicted, convicted, and sentenced to death. However, there was no error in failing to dismiss the indictments because this Court may substitute life imprisonment for the death penalty by authority of the provisions of 1973 Sess. Laws, c. 1201 § 7 (1974 Session).

This case is remanded to the Superior Court of Cumberland County with directions (1) that the presiding judge, without requiring the presence of defendant, enter judgments imposing life imprisonment for the two first-degree murders of which defendant has been convicted; and (2) that, in accordance with these judgments, the clerk of superior court issue commitments in substitution for the commitments heretofore issued. It is further ordered that the clerk furnish to the defendant and his attorney a copy of the judgments and commitments as revised in accordance with this opinion.

Due to the serious nature of this case, we have searched the record for errors other than those assigned by the defendant and have found none.

In the trial we find

No error.

Death sentence vacated and, in lieu thereof, life sentence imposed.