STATE OF NORTH CAROLINA v. BERNARD LEE PENN

No. 7721SC983

(Filed 6 June 1978)

1. **Homicide § 16.1— dying declarations—admissibility**

In a prosecution for second degree murder, the trial court properly allowed into evidence as dying declarations statements made by deceased while he was in the hospital, since the evidence tended to show that deceased suffered serious injuries when he was shot; the doctor attending deceased told him that his condition was serious, told him that he could die, and advised deceased as his condition worsened; and deceased asked to see his minister, wife and children because he didn't think he was going to make it.

State v. Penn

## 2. Homicide § 28— self-defense—jury instructions proper

In a prosecution for second degree murder, the jury clearly and correctly understood from the trial court's instructions that they should find defendant not guilty if, under the circumstances as they existed at the time of the killing, the State had failed to satisfy them beyond a reasonable doubt that defendant did not have a reasonable belief that he was about to suffer death or serious bodily harm at the hands of the victim, or that defendant used more force than reasonably appeared to him to be necessary, or that defendant was the aggressor.

APPEAL by defendant from *Long, Judge*. Judgment entered 14 July 1977, Superior Court, FORSYTH County. Heard in the Court of Appeals 31 March 1978.

Defendant was charged with second degree murder, convicted by the jury, and appeals from the judgment entered on the jury verdict.

Two witnesses for the State testified that they saw defendant shoot deceased, Leon Brenner Johnson. One witness knew both men; the other, only defendant. According to their testimony, the incident occurred under a street light, and both had a clear, unobstructed view of the area. Defendant was in an automobile and Johnson was standing in the street begging defendant "to give him his money." They were arguing. The motor of the car was not running, and the door was open. Defendant told deceased that he did not have his money. One witness testified that at that point deceased threw down his hat and coat and "grabbed at" defendant but did not touch him. The other witness said she did not see this. Both witnesses testified that defendant shot deceased from the car, then moved away in the car and "mighty quickly" drove back up to where deceased was lying in the street, got out of his car and shot him again, and got back in the car and left. After that shot, deceased did not move. Both witnesses were positive in their identification of defendant as the person who shot Johnson, and no objection was interposed to their testimony, either with respect to what happened or their identification of defendant as the culprit. One of them called the police and an ambulance. Deceased was alive when the officers arrived, bleeding profusely from his shoulder and stomach. He was vomiting, and his eyes were rolled back in his head. He was not able to talk with the officer. The shooting occurred in the early morning of 26 February 1977. The victim was hospitalized, underwent surgery, and died on 14 March 1977. During the period of

hospitalization, he told three persons about the shooting and identified defendant as the person who shot him. To this testimony defendant objected, excepted to the court's overruling the objection, and assigns as error the court's allowing the evidence to be heard by the jury.

*Attorney General Edmisten, by Assistant Attorney General Elisha H. Bunting, Jr., for the State.*

*Harper and Wood, by J. Clifton Harper, for defendant appellant.*

MORRIS, Judge.

[1] In addressing defendant's first assignment of error, we look first at G.S. 8-51.1 "Dying declarations" which provides:

"The dying declarations of a deceased person regarding the cause or circumstances of his death shall be admissible in evidence in all civil and criminal trials and other proceedings before courts, administrative agencies and other tribunals to the same extent and for the same purposes that they might have been admissible had the deceased survived and been sworn as a witness in the proceedings, subject to proof that:

(1) At the time of the making of such declaration the deceased was conscious of approaching death and believed there was no hope of recovery;

(2) Such declaration was voluntarily made."

Before the court allowed the witnesses to testify as to what Johnson told them while he was in the hospital, testimony was heard on voir dire from Dr. Jarman, Officer McFadden, Clyde Thomas, and James Albert Johnson. Whether a dying declaration is admissible is a question for the trial court, and his ruling is reviewable on appeal only with respect to whether there was sufficient competent evidence tending to show facts essential to support his ruling. *State v. Bowden*, 290 N.C. 702, 228 S.E. 2d 414 (1976).

Dr. Jarman testified that as to the abdominal wound "the bullet passed into the abdominal cavity, going a little bit backwards, and in its course severed the left femoral vein, which

is the main vein draining the left leg, traversed the sigmoid colon, which lies a little bit on the left side, through two loops of small intestine before severing the right internal and external iliac veins, which is the main veins draining the pelvis and the right leg, and lodging itself in the patient's right flank." The wound to the right shoulder "went downwards and backwards through the axilla, or the armpit, and severed the axillary artery and the axillary vein, which constitute the main blood supply and venous drainage of his right arm." The doctor talked to Johnson about his condition after he performed surgery on Johnson on 27 February and on each day thereafter until Johnson died. He described to Johnson the nature of his injuries, the surgical procedures which had been performed, and "the fact that he had at that time already shown manifestations of life-threatening complications, specifically renal failure and a bleeding disorder. I told him that it was a very significant possibility that either or both of those complications could result in his death." The doctor advised Johnson of the treatment they were adopting for him but told him there was no guarantee that it would be successful. These statements were reinforced each subsequent day. Johnson was advised of his progress each day, whether he was getting better or worse. He was getting worse and the doctor told him this each day. The practice at that hospital was to keep the patient informed daily of his condition. Johnson was told that there was a possibility he could die, and, as that possibility became more certain, he was so advised. Although the doctor did not at any time tell Johnson that he was going to die, he did tell him that his condition was worsening daily and there was a possibility of his losing his life. His condition deteriorated rapidly after 7 March, and he was conscious only intermittently after that date. From 1 March to the time of his death he was dialyzed every day.

When Officer McFadden talked with Johnson on 28 February, Johnson was in the intensive care unit and could not talk because there were tubes "down his mouth" running down his throat. He understood what Officer McFadden asked him and shook his head affirmatively in answer to questions as to whether defendant had shot him.

Clyde Thomas testified that on 28 February he visited Johnson and that Johnson mumbled that defendant had shot him and that he wanted to see the pastor of his church because he

didn't think he was going to make it; that he was really messed up. The next day he told Thomas that he'd like to see his wife and children "before he leaves here" because he wouldn't "be around much longer."

In *State v. Cousin*, 291 N.C. 413, 230 S.E. 2d 518 (1976), the Court quoted what was said in *State v. Bowden, supra,* as follows:

"The admissibility of a declaration as a dying declaration is a question to be determined by the trial judge, and when the judge admits the declaration, his ruling is reviewable only to determine whether there is evidence tending to show facts essential to support it. [Citation omitted.] Under the new statute, the declaration must have been voluntary and made when the declarant was conscious of approaching death and without hope for recovery. It is the requirement that the declarant be aware of his impending death that has most often concerned the courts under the case law and now concerns us under the statute. We note, without deciding, that the words, 'no hope of recovery' in the statute may make the statutory exception to the hearsay rule more restrictive than existing case law. However, we believe that on the facts of this case, the declarant Larry Lovett must have believed that there was no hope for recovery. It is not necessary for the declarant to state that he perceives he is going to die. If all the circumstances, including the nature of the wound, indicate that the declarant realized death was near, this requirement of the law is satisfied. [Citation omitted.]" *State v. Cousin*, 291 N.C. at 419-420, 230 S.E. 2d at 522.

A case with striking similarities to the one *sub judice* is *State v. Stevens*, 295 N.C. 21, 243 S.E. 2d 771 (1978). There the Court, speaking through Chief Justice Sharp, referring to the Court's statement in *Bowden* and *Cousin* that the words "no hope of recovery" contained in G.S. 8-51.1 might have the result of imposing more restrictions on the statutory exception to the hearsay rule than the existing case law, said:

"We have now concluded that the statutory prerequisites that the deceased must have been 'conscious of approaching death and believed that there was no hope of recovery' do not change our case-law requirements that in order to be ad-

missible the declarations of a decedent must have been 'in present anticipation of death.' " (Citations omitted.)

The Court further said that:

"[I]t is enough if he 'believed he was going to die.' *State v. Tate*, 161 N.C. 280, 282, 76 S.E. 713, 714 (1912)'. *Accord, State v. Bright*, 215 N.C. 537, 2 S.E. 2d 541 (1939); *State v. Boggan*, 133 N.C. 761, 763, 76 S.E. 111, 114 (1903). Obviously, if one believes he is going to die, he believes there is 'no hope of recovery.' " *Id.* at 29.

We are of the opinion that the evidence tends to show facts essential to support the court's ruling, i.e. that at the time Johnson identified defendant as the person who shot him, he "was conscious of approaching death and believed there was no hope of recovery." No question is raised with respect to voluntariness. We note parenthetically that without objection two eye witnesses had already made positive identification of defendant as the assailant. This assignment of error is overruled.

[2] By defendant's only other assignment of error, the instructions to the jury as to self-defense are challenged. Defendant contends that the instruction as given required the State to prove that defendant did not use more force than reasonably appeared to be necessary rather than that the defendant did use more force than reasonably appeared necessary, thus placing a lesser standard on the State which omitted the element of apparent necessity from the instruction on self-defense. The court clearly, thoroughly, and accurately instructed the jury on the law relating to self-defense and clearly charged the jury the burden was on the State to prove that defendant did not act in self-defense. Each element of self-defense was concisely given and the court emphasized that the circumstances, including the amount of force, should be considered as they appeared to the defendant at the time. We think the jury clearly understood that they should find the defendant not guillty if, under the circumstances as they existed at the time of the killing, the State had failed to satisfy them beyond a reasonable doubt that defendant did not have a reasonable belief that he was about to suffer death or serious bodily harm at the hands of Johnson, or that defendant used more force than reasonably appeared to him to be necessary, or that defendant was the aggressor.

"If the charge as a whole presents the law fairly and clearly to the jury, the fact that isolated expressions, standing alone, might be considered erroneous will afford no ground for reversal. *State v. Hall*, 267 N.C. 90, 147 S.E. 2d 548 (1966). Furthermore, insubstantial technical errors which could not have affected the result will not be held prejudicial. *State v. Norris*, 242 N.C. 47, 86 S.E. 2d 916 (1955)." *State v. McWilliams*, 277 N.C. 680, 685, 178 S.E. 2d 476, 479 (1970).

We cannot perceive that the error complained of could have affected the result here, particularly when the charge as a whole so clearly gave the jury the law of self-defense. This assignment of error is also overruled.

No error.

Judges MARTIN and ARNOLD concur.