STATE v. SAMUEL L. KIGER.

*Larceny—Trial—Evidence—Argument of Counsel.*

1. In the trial of an indictment for larceny of brandy, evidence as to marks upon the barrels containing it was competent to identify the packages.

2. In the trial of an indictment, it was not improper for the counsel for the prosecution to comment on the fact that the defendant failed to introduce witnesses whom he had summoned and who were present, or that he failed to prove his innocence by his brother, who had been summoned by the State.

3. It is too late, after verdict, for the defendant to raise the point that there was no evidence to go to the jury sufficient to convict him, for, treated as an omission to charge, it is not ground for exception, in the absence of a prayer for instruction, and treated otherwise than as an omission it is waived when not taken at the time.

4. An objection that there was no evidence to go to the jury sufficient to convict a defendant, cannot be taken for the first time in this Court.

5. Where there is no sufficient evidence to permit a case to go to the jury, the trial Judge may so rule and withdraw the case from the jury, but if the evidence is merely weak, and such as would not induce the Judge, if a juror, to convict, he has no authority to so withdraw the case.

6. The trial Judge is vested with the power to set aside a verdict and grant a new trial, if he deems the verdict to be against the evidence, or the evidence insufficient to justify conviction. but, as this is a matter of discretion. his granting or refusing a new trial on such grounds is not reviewable.

This was an indictment for larceny, tried before *Whitaker,* *J.,* and a jury, at May Term, 1894, of FORSYTH Superior Court.

The State offered the following evidence:

Asa Dunkins testified that about the 16th of January, 1894, he had several barrels of brandy stolen from his place in Yadkin County, about three miles beyond the Shallow Ford, on the Yadkin river. That the brandy

was "blockade." He had it concealed near the house, in a piece of woods; part of it in a hole in the ground, about twenty-two miles from Winston. That the day before the brandy was stolen, about noon, he met defendant and one John Bolin about one mile from Winston, going towards the Shallow Ford in a two-horse wagon. That the brandy was taken that night. That the next day, when he missed the brandy, he instituted search and found that two two-horse wagons had crossed the Shallow Ford, left the main road which passed through the village of Huntsville, and turned off along a by-road through Conrad's plantation, stopped near where the brandy was concealed, and there were signs of the brandy having been rolled out to the wagons and loaded. That near the place, in Conrad's field, he saw where the team had started, and near by found a plow-handle had been broken off of a plow. That he followed the track back to the main road at Shallow Ford, coming towards Winston, where other vehicles had obliterated the track. That the next day he came to Winston, procured a search warrant, and searched defendant's house, his brother Thomas Kiger's house, and found an empty barrel with a sourwood stopper which he thought was his in Thomas Kiger's house. That afterwards he searched the premises of Jack Kiger, a brother of defendant's and Thomas Kiger, and found six barrels of his brandy concealed in a gully near Jack Kiger's house, covered up with pine trees, that had been cut across the gully, with prints showing that barrels had been rolled from Kiger's house through the old-field pines. That Jack Kiger lived one-fourth of a mile from the Shallow Ford road, between Winston and Shallow Ford, about nine miles from Winston and three miles this side of Lewisville. That he knew the barrels by private marks upon them; they were his barrels and were filled with peach and apple brandy, as his were.

This evidence was objected to by defendant, upon the ground that the indictment did not describe the barrels. Exception overruled. Defendant excepted.

Defendant Thomas Kiger and Thomas Bolin and William Bolin were indicted together, but the other three defendants had not been taken, and S. L. Kiger alone was on trial.

William Bevil testified that the evening before the brandy was taken he saw defendant and John Bolin pass along the Shallow Ford road, going towards Shallow Ford, in a two-horse wagon. Several witnesses testified that all four of the defendants passed through Lewisville about 8 o'clock on night the brandy was taken; stopped at a store, left the wagon in the road, bought crakecrs and sardines, and had a bottle and took a drink and left. There was evidence that two wagons passed a house about one hundred yards from Shallow Ford, coming towards Winston, about 1 or 2 o'clock at night, same night brandy was stolen. That two men were walking. The wagon appeared to be loaded, and was covered with sheets or quilts; that one of the parties walking called to the driver of the front wagon to "hurry up, it was getting d—d late." A wagoner testified that two wagons, appearing to be loaded, passed his camp near Lewisville, on the Shallow Ford road, going towards Winston, about 2 o'clock night of the theft, with four men, two driving and two walking behind with guns.

Norman Whitman testified that he lived on the Shallow Ford road, between Westbend and Jack Kiger's, and about twelve miles from Winston. That about 4 o'clock the morning of the theft the defendant came to his door, woke him up and got a lantern, a hammer and some nails, telling him he was from Davie County, and had broken a wagon and wanted to mend it. That he saw him go out into the road where the wagon was standing. That he fixed it and came back with the lantern and hammer. That the next day he went to the place where the wagon was, and saw where they had

apparently been working on the wagon, and then picked up a piece of a plow-handle, which he gave to Asa Dunkins.

Dunkins testified that he took the piece of plow-handle back to Conrad's field, near where his brandy was stolen, and fitted the broken handle together in the plow, and it was the piece which had been broken off and carried away.

It was in evidence that all four of the defendants lived in the suburbs of Winston, but that John Bolin had worked for the prosecutor in Yadkin, and knew where he kept his "blockade" liquors, and helped to dry the corn.

The defendant introduced no testimony. One of the counsel for the prosecutor, in addressing the jury, said the defendant had called ten witnesses and had them present himself, but that he had failed to show by any witness where he was that night.

To this the defendant objected, and asked his Honor not to allow the comment of counsel.

His Honor stated that counsel was about to get on dangerous grounds, but that he did not comment on what the defendant did or did not do, but as to the other witnesses it was admissible to thus comment.

Another one of the State's counsel, while addressing the jury, turned and faced the defendant, sitting near his counsel, and said : " Your brother Jack Kiger knows whether you brought that brandy to his house. He is here in the courthouse. Why, if you did not carry it there and conceal it, did you not show it by him ? "

Defendant's counsel here interrupted the comment, and said that Jack Kiger had been summoned as a State witness and sworn, but not tendered to the defendant, and asked the Court to stop the counsel. His Honor stated that he could not see that the comment was improper, and directed the counsel to proceed. Defendant excepted.

Counsel continued on that line of argument, saying to the jury: " His Honor does not say that I am off the track."

There was no instruction prayed by either party. There was a verdict of guilty. Motion for new trial for errors excepted to, and on the additional ground that there was not evidence sufficient to go to the jury and to justify a verdict, but no such point was made before verdict. Motion overruled. Judgment and appeal.

*The Attorney General,* for the State.
*Mr. E. B. Jones,* for defendant.

CLARK, J.: The evidence as to the marks upon the barrels was competent to identify the packages. It was sufficient to charge the larceny of so many gallons of brandy, and as a matter of evidence to show that it was in barrels and identify them. *State* v. *Harris,* 64 N. C., 127. If the State had charged the larceny of barrels of brandy, it would have been held to proof of its having been in barrels when stolen. *State* v. *Moore,* 33 N. C., 70.

It was not improper for the counsel for the prosecution to comment on the fact that the defendant had witnesses present, summoned by him, but had not introduced them. *State* v. *Jones,* 77 N. C., 520. Nor was there any impropriety in asking why defendant did not prove by his brother where he was that night. It made no difference that such brother had been summoned by the State, or had not been summoned at all. The defendant could have summoned his brother as his witness in either event. *State* v. *Johnston,* 88 N. C., 623. In fact, in this case, the State had tendered the witness to the defendant who declined to put him on the stand.

It is too late after the verdict for the defendant to raise the point that there was no evidence to go to the jury. *State* v. *Braddy,* 104 N. C., 737; *Sugg* v. *Watson,* 101, N. C., 188; *State* v. *Varner,* at this term. That is a point which must be made in apt time. The defendant cannot lie by and thus take

"two bites at the cherry." This would be trifling with the Court. Treated as an omission to charge, it is not ground for exception in the absence of a prayer for instruction. See numerous cases collected in Clark's Code, 2d Ed., pp. 382, 394. Treated otherwise than as an exception for omission in the charge, it is waived if not taken at the time. *Taylor* v. *Plummer*, 105 N. C., 56. Still less could such an exception be made for the first time in this Court, *State* v. *Bruce*, 106 N. C., 792; *Lawrence* v. *Hester*, 93 N. C., 79; *State* v. *Glisson*, 93 N. C., 506, which hold that it must be taken "by a request to instruct the jury." The Attorney General, however, waives the objection that the exception was not taken before verdict, and by consent we consider it as if it had been made in apt time. If there is not any evidence sufficient to permit the case to go to the jury, as a matter of law the Court may so rule and withdraw the case from the jury. But if it is merely weak evidence, not such as the presiding Judge, himself, sitting as a juror, might perhaps convict upon, he has no such authority. The twelve jurors are the triers of fact, designated and provided for by the Constitution. If the presiding Judge deems that the verdict is against the weight of evidence, or that the evidence was insufficient in his judgment to justify conviction, he is vested with the power to set aside the verdict and grant a new trial. This is a matter of discretion, and his granting or refusing a new trial on such ground is not subject to review here. The fact that twelve men have convicted on the evidence, will often and properly make him less sure of his own opinion to the contrary. Nor should even he give a new trial merely because, if a juror, he might have voted for acquittal. Many things give color to the correctness of the verdict, the bearing and manner of the witness, shades of meaning dependent upon tone and emphasis, and the like. These cannot be presented in the record on appeal. The Judges of the Superior Courts are humane and intelligent men, in whose hands this

STATE *v.* KIGER.

discretion has always been wisely vested, and we have no disposition to infringe upon their limits. It is only when there is no evidence sufficient to be submitted to the jury, duly excepted to in apt time, that an appeal has ever been permitted. In some other.States the appellate Court, reaching out after jurisdiction, has so abused this rule that it has caused a provision to be placed in the State Constitution, notably in the Constitution just adopted by the State of New York, forbidding the Court of Appeals to grant a new trial, even upon the ground that there was no evidence whatever to go to the jury. If there is any abuse, it can be corrected by the pardoning power, and is more easily remedied than that seen in many States of the Appellate Court sitting as a revisory jury upon the facts, out of sight of the witnesses and those accompanying circumstances of which the jury and presiding Judge had the benefit.

Without going into a detailed consideration of the evidence in this case, it is sufficient to say that there was sufficient evidence to warrant the case being submitted to the jury. Of the weight to be given it, the jury were the sole judges, subject to the supervisory power of the presiding Judge to set aside the verdict, if in his judgment it was not warranted. His refusal to do so is not reviewable on appeal. This has always been settled law in this State.

No Error.