STATE v. WILLIAM JENKS.

(Filed 11 October, 1922.)

**Appeal and Error—Improper Remarks of Counsel—Jury—Absence of Defendant's Witnesses—Objections and Exceptions—Prayers for Instruction—Evidence—Nonsuit—Trials.**

Where there is evidence that the defendant and others were present, participating in the operation of a still, evidently being in use at the time and extensively in the manufacture of liquor, who had left to avoid arrest; and conflicting evidence whether or not it was the defendant who was seen to help another put the cap on the still, there was sufficient to sustain a verdict of guilty, without the necessity of. proving this single fact as to the cap; and the remarks of the solicitor to the jury commenting upon the absence of defendant's witness to prove that he did not help with the cap, is regarded as harmless, and upon an immaterial point, especially as the defendant's attorney permitted the solicitor's remarks to go unchallenged at the time, and did not offer special prayers for instruction thereon.

APPEAL by defendant from *Devin, J.,* at July Term, 1922, of WAKE. The defendant was indicted jointly with Wilson Wagoner, Luther Clark, Ed. Marshall, and one Bowling for the illicit distilling of whiskey and aiding therein. He was convicted, sentenced, and appealed.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*Armistead Jones & Son for defendant.*

CLARK, C. J.   The evidence of the State showed that on 4 February, 1922, the officers, Sears and Howard, found a distillery plant being operated in Wake County by the defendant Jenks, Wilson Wagoner, Luther Clark, Ed. Marshall, and one Bowling.   The still was on the furnace, and nearby were large boxes containing beer ready for distillation.   Ed. Marshall testified that the defendant Jenks and Bowling put the cap on the still.   From appearances about the still, there had been much whiskey made there before.   At the time Sears and Howard came up the cap had been put on the still and the still was running.

Upon the evidence it does not seem that it was material whether the defendant Jenks put the cap on the still if, as the uncontradicted evidence shows, that the defendants and others named were at the still and it was running when the officers went up to it.   Sears testified that when he and Howard went up to the still there were five men there: "Jenks, the defendant, Wilson Wagoner, Luther Clark, Marshall, and another man we did not recognize.   All were white men.   The still was located about a mile from Jenks' house."

He further said: "I got in 24 steps of those parties, and they left the still as we went on up. I found the still and the copper was in the furnace and it was running. I did not see any whiskey; I did not know but they said the worm was on. I saw two stands of beer; there was one barrel and a box something like two-thirds full. One of the boxes was six or seven feet long, and something like four or five feet wide, and the other, three or four feet square. They would average something like two and a half feet deep. There was beer in one of the boxes. I did not see any of the parties named at work at the still. As I went up to the still there was a gun between us and Mr. Jenks, and as Mr. Jenks started off he walked back and picked up the gun and he went about thirty or fifty yards. It was a shotgun. I did not go to where Jenks stopped. I did not have any conversation with him, or the others, except Marshall, that night. From the appearance around the still there had been a whole lot of whiskey made there. There was a little ditch leading to the branch and it was full of slops, and all the stands had been filled. I could not tell how much had been run out that way, and the space was as long as from here to the back of the court room, and it was in a little trench place." After giving other details, he said: "I saw these men when we got within 24 steps of the still. When we got that near Jenks started off and went back and got his gun. He made no effort to run, but walked off to the branch. He did not undertake to use the gun."

Ed. Marshall testified for the State to the same state of facts. He said: "Bowling and Jenks put the cap on. It was copper. Jenks sat down on the keg. He put his gun by the side of a pine. The cap had been on three or four minutes before Sears and Howard came up."

On cross-examination he stated that he had never seen any one at work there at the still except Bowling and defendant Jenks; that Clark, Wagoner, and Bowling were filling up the still. Jenks helped; he took hold of it and set it down. Bowling took up the sack and set it down on a keg. Bowling took up the cap and Jenks took hold of it and put it down in there. It took about 4 or 5 minutes to do this. I don't know that Bowling was in charge of the operation. He was helping fill up the still with beer.

There was other evidence in corroboration for the State. The defendant put on no evidence.

The defendant in this Court put his argument chiefly upon the following statement by the solicitor. The solicitor in the course of his argument said: "The defendant could have had other witnesses who were testified to have been present at the still, who could have been put on the stand to prove that he did not put the cap on the still. They are here in the courthouse to prove that he did not put the cap on the still (men-

tioning the names of the defendant's witnesses), who were testified to have been present at the still, but whom he did not put on the stand to prove that he did not put the cap on the still."

It appears in the record that Wilson Wagoner and Luther Clark had been disposed of at March Term, 1922, and that the defendant Norman Bowling had never been taken. It also appears that the defendant Ed. Marshall testified on this trial.

It would seem from the statement of the judge that these witnesses named by the solicitor were present in the court room. It is a reasonable inference, and there was no finding asked or made which defendant's able counsel would have done, had they not been present. We cannot presume that they were not for the presumption is of the correctness of the proceedings below.

There can be no presumption that the solicitor untruthfully stated that the witnesses, whose names he mentioned, were not in the court room, or that the judge was a party to such statement, if untrue, by refusing to make him correct it.

But even if they were not present, of which there is no proof or finding, it would have been harmless error, for in view of the testimony in this case it was immaterial whether the defendant put the cap on or not, or, indeed, whether the cap was on.

In *S. v. Blackwell,* 180 N. C., 733, where the defendant was arrested, as here, at an obscure place suitable for making whiskey, the still being complete except for the cap and worm, which would not be needed in a week (the meal, however, being reduced to beer), *Allen, J.,* said that though the defendant had not produced any completed product, and the cap and worm were not present, there was evidence, as in this case, that the still had been used before and this was sufficient evidence to justify the conviction.

In this case the evidence was that the still was in operation; that much whiskey had been manufactured there; that this defendant was caught there with the other men charged in the indictment, and that he and all of them left immediately when the officers appeared.

In *S. v. Jones,* 77 N. C., 520, it was held no error that the solicitor commented on the failure of the defendant to examine one Whitley, who had been sworn as a witness. In *S. v. Johnston,* 88 N. C., 623, the Court held that it was not reversible error that the solicitor in his argument said: "If the defendant did not make the tracks, who did? If the defendant did not make them, if they were made by another, the defendant ought to show it."

In *S. v. Kiger,* 115 N. C., 746, where the defendant, as in this case, introduced no testimony, the counsel for the prosecution, addressing the jury, said the defendant had called ten witnesses and had them present

himself, but that he had failed to show by any witness where he was that night. Again he said, addressing the defendant himself: "Your brother, Jack Kiger, knows whether you brought that brandy to his house; he is here in the court room. Why, if you did not carry it there and conceal it, did you not show it by him?" The Court held that this was not grounds for a new trial.

In *S. v. Costner,* 127 N. C., 566, the solicitor commented on the fact that the defendant had able counsel and had not brought a witness to show or explain where he spent that night. The Court held that on the facts of that case such comment was not out of place. In *S. v. Goode,* 132 N. C., at p. 984, the Court held that the solicitor's remarks were improper solely because he stated that the unexamined witness had been subpœnaed, and there was proof to the contrary. In this case, however, there was no such statement.

The other exceptions do not require discussion. The verdict of the jury was in accordance with the evidence (which was uncontradicted) and the law. *S. v. Perry,* 179 N. C., 718; *S. v. Blackwell,* 180 N. C., 733.

No error.