STATE OF NORTH CAROLINA v. WILLIAM BRADY TILLEY AND HAROLD GLENWOOD JORDAN

No. 86

(Filed 7 March 1977)

1. Criminal Law § 79— acts and declarations of co-conspirators

    When the State has introduced *prima facie* evidence of a conspiracy, the acts and declarations of each party to the conspiracy in furtherance of its objectives are admissible against the other members regardless of their presence or absence at the time the acts and declarations were done or uttered.

2. Criminal Law § 79— acts and declarations of co-conspirators — establishment of conspiracy — order of proof

    While ideally the State should first establish a *prima facie* case for the existence of a conspiracy with extrinsic evidence and then tender the declarations and acts of the conspirators linking them to the criminal venture, this order of proof is not always feasible and can be altered.

3. Criminal Law § 79— acts of co-conspirators — absence of defendant

    Where the State established a *prima facie* case of conspiracy by defendants and another to commit an assault with a firearm, the actions of one defendant and a co-conspirator in borrowing the keys to a car and the exchange of conversation accompanying such actions during the pendency and in furtherance of the conspiracy were admissible against both defendants, although one defendant was absent during such actions and conversation.

State v. Tilley

4. Criminal Law § 79— acts before or after conspiracy — admissibility

Acts done by a co-conspirator before or after the conspiracy which were not intended as declarations are not hearsay and thus are competent evidence if relevant.

5. Criminal Law § 79— co-conspirator's act of carrying pistol — admissibility

In a prosecution for murder and conspiracy to commit an assault with a firearm, the trial court properly admitted testimony that witnesses observed defendants' co-conspirator carrying a .25 caliber pistol during the day and evening of the murder, although these acts of the co-conspirator occurred before the conspiracy was entered, since the acts of carrying a pistol were not intended as declarations, and the testimony was within the knowledge of the witnesses and was not hearsay.

6. Criminal Law §§ 73, 79— acts of witness after conspiracy terminated — admissibility

In a prosecution for conspiracy to commit an assault with a firearm and murder resulting from the conspiracy, a witness's testimony of her own knowledge that she threw an accomplice's pistol away was properly admitted since it was probative and not hearsay, notwithstanding she threw the pistol away after termination of the conspiracy and out of the presence of defendants.

7. Criminal Law § 73— requests by defendant — res gestae

Requests by one defendant and a co-conspirator that the witness drive the co-conspirator home, made immediately after a murder resulting from the conspiracy, were admissible as part of the res gestae.

8. Criminal Law §§ 48, 77— admissions and admissions by silence

A conversation some two weeks after a murder in which defendants asked the witness what an SBI agent had asked her about the murder and what she had told him was admissible as an admission against those defendants who participated in the conversation and as an admission by silence against non-participating defendants who were present; furthermore, the admission of testimony as to the conversation was not prejudicial to defendants since the conversation was not inconsistent with defendants' innocence.

9. Criminal Law §§ 15, 92— publicity of accomplice's trial — motions for continuance, change of venue, and severance

In a prosecution for murder and conspiracy to commit a felonious assault, the trial court did not abuse its discretion in the denial of defendants' motions for a continuance, a change of venue and separate trials because of publicity surrounding the separate trial of a co-conspirator one week earlier where newspaper articles of the co-conspirator's trial were not inaccurate or inflammatory, and no juror objectionable to defendants was allowed to sit on the jury.

**10. Criminal Law § 102— jury argument — failure to contradict State's case**

The district attorney's remarks directed at the failure of defendants to produce exculpatory evidence or to contradict the State's case did not constitute an impermissible comment on the failure of defendants to take the stand.

**11. Criminal Law § 102— jury argument — speculation — no argument outside record**

The district attorney's speculation that the murder victim's wife could have given more damaging testimony in this trial was arguably a reasonable inference to be drawn from the evidence and did not constitute an argument outside the record by innuendo concerning testimony by the victim's wife at an earlier trial of defendants' accomplice.

**12. Criminal Law § 102— jury argument — constitutional rights of victim and defendants**

The district attorney's argument that the murder victim would still be alive if his rights "had been observed to the extent that we are now undertaking to observe these defendants' rights" was within permissible bounds.

**13. Criminal Law §§ 52, 57— expert testimony — use of "probably" or "could have"**

An expert on gun residue tests could properly testify that a defendant "probably" or "could have" fired a gun within a short time prior to the administration of the test to him.

**14. Homicide § 21; Conspiracy § 6— first degree murder — conspiracy to assault with firearm — sufficiency of evidence**

The State's evidence was sufficient for submission to the jury on issues of defendants' guilt of first degree murder and conspiracy to commit an assault with a firearm where it tended to show that the victim went with defendants to a party at the trailer of defendants' accomplice; the accomplice was armed with a .25 caliber pistol; defendants took the victim home and an argument occurred; defendants returned to the trailer and they and the accomplice borrowed a car and left again; shortly thereafter a car matching the description of the borrowed car, by sight and sound of horn, pulled up in front of the victim's trailer and its horn was blown; voices and the closing of a trunk lid were heard; the victim ran from the trailer and was shot with a shotgun and the accomplice's .25 caliber pistol, causing his death; shortly thereafter the accomplice hid a shotgun under a mattress at his father's house; and tests showed that one defendant had probably fired a gun during the night of the crimes.

DEFENDANTS appeal pursuant to G.S. 7A-27(a) from judgments of *Wood, J.,* 29 September 1975 Session, STOKES Superior Court. Defendants' convictions of conspiracy to commit a felonious assault with a firearm were certified for initial appellate review by the Supreme Court pursuant to G.S. 7A-31(a) on 26

State v. Tilley

February 1976. This case was docketed and argued as No. 85, Spring Term 1976.

On indictments proper in form, defendants were charged with first degree murder and conspiracy to commit a felonious assault with a firearm. Defendants were convicted of second degree murder and conspiracy and sentenced to life imprisonment for the murder and ten years imprisonment for the conspiracy. J. V. Smith, the third defendant, was tried separately a week earlier and convicted of first degree murder and conspiracy. That case was affirmed in *State v. Smith,* 290 N.C. 148, 226 S.E. 2d 10 (1976).

Evidence for the State tended to show that Gail Bullins, Willia Dean Hicks and J. V. Smith drove to Smith's trailer on Highway 704 near Walnut Cove early on the evening of 24 January 1975 in Smith's black Chevrolet Monte Carlo automobile. Over the next several hours, David Willard, Larry Hodge, Julia Pruitt, Winfred Hall (the deceased) and the defendants, Harold Jordan and Brady Tilley, arrived at the trailer. No one present remembered the exact order in which they came. People began to drink, and a party developed. Although the party apparently was amicable, several persons testified that J. V. Smith was openly carrying a pearl handle .25 caliber automatic pistol.

Around 9 p.m., Gail Bullins, who had been drinking heavily, attempted to walk across the living room. When she fell down, Larry Hodge helped her up and escorted her to the bedroom of Smith's trailer where they both went to bed. At approximately 10:30 p.m. Harold Jordan and Brady Tilley left the party to take Winfred Hall home. They returned shortly from that errand and after a few minutes Tilley and Smith went into the bedroom. Smith asked Hodge if they could borrow Hodge's car. Hodge owned a white 1962 Chevrolet Impala with a red stripe down the side. The car had six tail lights and double headlights. Smith indicated that Tilley would drive. Hodge told them where his keys were and a few minutes later he heard a car drive off. He testified that the next morning his car was not in the same position that it had been in when he parked it the night before. Julia Pruitt testified that Smith, Tilley, and Jordan left the trailer around 11:00 p.m.

Mr. and Mrs. Hall lived in a trailer park on Wards Road off Highway 704, about one mile from Smith's trailer. Hall left

the trailer on the morning of 24 January 1975 with Harold Jordan. He returned that night around 6:00 p.m. with Jordan and Tilley, but stayed at home for only five minutes and left again. Harold Jordan brought him back around 10:30 p.m. Mrs. Hall had the television turned on so she could not understand the content of the conversation, but she could hear loud voices outside after Jordan drove up. Hall walked in the trailer and began to pace back and forth in the living room. He appeared intoxicated and looked mad.

Shortly after 11:00 p.m. he undressed and promptly fell asleep. His wife remained awake and heard a car pull up in the parking lot around 11:30 p.m. The automobile was an older model white car with a stripe down the side. Neighbors in the trailer park noted the car had dual headlights and six tail lights. The car sounded its horn twice. Mrs. Hall described it as "a real funny sounding horn." (Mrs. Hall later identified Larry Hodge's car horn as sounding exactly like the horn she heard on the night of the murder. Hodge testified that his horn was malfunctioning that night and thus sounded different from other car horns.) Mrs. Hall heard a trunk lid close and loud voices. Winfred Hall awoke and looked out the window several times. He appeared "scared" and started to leave the trailer. He stopped, pulled on his pants, and then ran out.

Mrs. Hall heard the car start to back up. She then heard three shots. A bullet came through the bedroom wall of her trailer. She ran outside and found her husband lying in the parking lot. He had been shot under the heart with a shotgun. His only words were, "They shot me." Winfred Hall died en route to the hospital.

Meanwhile, Smith, Tilley and Jordan re-entered Smith's trailer. Tilley asked Julia Pruitt if she would drive J. V. Smith to the home of Edgar Smith, J. V. Smith's father. She did so and observed a shotgun lying on the back seat of Smith's car. (No one else who had been in Smith's car earlier in the day had seen this weapon.) Smith took the shotgun from the car and placed it under the mattress of his father's bed. Smith and Pruitt then rejoined Tilley and Jordan at the trailer.

The next day, investigating officers recovered two shell casings from the parking lot and a bullet from the Hall trailer. The shell casings were definitely identified as having been fired from J. V. Smith's .25 caliber pistol. It was determined that

the bullet could have been fired from the same gun. The same day, an S.B.I. special agent took gunshot residue wipings from the hands of Brady Tilley and Harold Jordan. Analysis of those wipings revealed that Tilley had probably fired a gun within the past twelve hours. The tests were inconclusive as to Jordan.

The day after the shooting, Smith gave his pearl handled pistol to Julia Pruitt and she hid it in her trailer. A week later she placed it in a brown paper bag and threw it into a pasture behind her house. Later she assisted law enforcement officers in its recovery.

Two weeks after the shooting, Smith, Tilley and Jordan paid a visit to Gail Bullins. They inquired as to what S.B.I. Agent Terry Johnson had asked her about the murder and what she had told him.

The defendants presented no evidence.

Other facts necessary to the decision will be related in the opinion.

*Attorney General Rufus L. Edmisten by Senior Deputy Attorney General R. Bruce White, Jr., and Assistant Attorney General Zoro J. Guice, Jr., for the State.*

*Malcolm B. Grandy for William Brady Tilley, defendant.*

*A. D. Folger, Jr., George T. Fulp, and Ronald M. Price for Harold Glenwood Jordan, defendant.*

COPELAND, Justice.

Appellants' first assignment of error relates to the admission in evidence of certain incriminating statements and actions which were made out of the presence of one or both of the defendants. Although defendants stress their absence on these occasions, we find this factor to be irrelevant to the determination of the admissibility of the challenged evidence. At the core of defendants' objections is the hearsay rule. When declarations and acts intended as declarations are offered for the purpose of proving the truth of the matters asserted therein and depend for their probative value on the competency and credibility of an out-of-court declarant, they are classified hearsay and are usually inadmissible. 1 Stansbury's N. C. Evidence, § 138 (Brandis Rev. 1973).

But where the proferred testimony consists of extra-judicial declarations offered for the purpose of proving the truth of the matters stated, it is admissible in the face of a hearsay objection if the declarations were made by a party to a criminal conspiracy during the course of and in pursuit of the goals of the illegal scheme. *State v. Branch,* 288 N.C. 514, 220 S.E. 2d 495 (1975); *State v. Conrad,* 275 N.C. 342, 168 S.E. 2d 39 (1969); 2 Stansbury's N. C. Evidence, § 173 (Brandis Rev. 1973).

The rule allowing into evidence statements by a co-conspirator is not an exception to the hearsay rule under the rules of evidence. Incriminating statements or acts are admissible against the declarant or actor as an admission not violating the hearsay rule because the declarant or actor cannot be heard to complain about not having a right to cross-examine himself. By a rule of substantive law, vicarious liability for the same acts and declarations is extended to the declarant or actor's co-conspirators. 2 Stansbury's N. C. Evidence, §§ 167, 168, 173 (Brandis Rev. 1973); IV Wigmore on Evidence, §§ 1048, 1079 (Chadbourn Rev. 1942).

[1]  According to the general rule, when the State has introduced *prima facie* evidence of a conspiracy, the acts and declarations of each party to it in furtherance of its objectives are admissible against the other members *regardless* of their presence or absence at the time the acts and declarations were done or uttered. *State v. Conrad, supra, see State v. Branch, supra; State v. Lea,* 203 N.C. 13, 164 S.E. 737 (1932). Before the acts or declarations of one conspirator can be considered as evidence against his co-conspirators, there must be a showing that "(1) a conspiracy existed; (2) the acts or declarations were made by a party to it and in pursuance of its objectives; and (3) while it was active, that is, after it was formed and before it ended." *State v. Lee,* 277 N.C. 205, 213, 176 S.E. 2d 765, 769-70 (1970); *State v. Conrad, supra* at 348, 168 S.E. 2d at 43.

[2]  The conspiracy must be established independently of the declarations or acts sought to be admitted. *State v. Wells,* 219 N.C. 354, 13 S.E. 2d 613 (1941); *Bryce v. Butler,* 70 N.C. 585 (1874). Ideally, the State should first establish a *prima facie* case for the existence of the conspiracy with extrinsic evidence and then tender the declarations and acts of the conspirators linking them to the criminal venture. This order of proof is not always feasible and can be altered. "Sometimes for the sake

of convenience the *acts or declarations of one are admitted in evidence before sufficient proof is given of the conspiracy,* the prosecutor undertaking to furnish such proof in a subsequent state of the cause." *State v. Jackson,* 82 N.C. 565, 568 (1880). "Because of the nature of the offense courts have recognized the inherent difficulty in proving the formation and activities of the criminal plan and have allowed wide latitude in the order in which pertinent facts are offered in evidence. '[A]nd if at the close of the evidence every constituent of the offense charged is proved the verdict rested thereon will not be disturbed. . . .' (Citations omitted.)" *State v. Conrad, supra* at 347, 168 S.E. 2d at 43.

[3] Applying these principles to the separate assignments of error raised by the defendants, we find no error in the admission of the challenged evidence. We believe the prosecution sufficiently established a *prima facie* case of conspiracy on the part of defendants Jordan, Tilley and Smith to assault Winfred Hall with a firearm by evidence other than that now challenged. The exact moment when the three conspirators agreed on their evil scheme cannot be fixed with any certainty; however, it seems clear that the agreement had been reached by the time Harold Jordan and Brady Tilley returned to J. V. Smith's trailer after taking Hall home. At that point, J. V. Smith and Brady Tilley went into the bedroom of the trailer and borrowed the keys to Larry Hodge's car. This action and the exchange of conversation accompanying it were made during the pendency and in furtherance of the conspiracy and so were admissible equally against Brady Tilley and Harold Jordan. *State v. Branch, supra; State v. Conrad, supra.* Harold Jordan's absence during this period is irrelevant to the admissibility of this evidence against him. Defendants' exceptions 19-30, 36-37 are overruled.

[5] Defendants object to testimony by numerous witnesses that they observed J. V. Smith carrying and brandishing a pearl handled, .25 caliber, automatic pistol during the day and evening of the murder. The objection is premised on the fact that these acts of co-conspirator Smith were before the conspiracy was entered, not in furtherance of its illegal design, and out of the presence of defendants Tilley and Jordan. While all these assertions are true, they are irrelevant.

We have said on numerous occasions, without clarification, that "a different rule applies to acts and declarations made

before the conspiracy was formed or after it terminated. Prior or subsequent acts or declarations are admissible only against him who committed the acts or made the declarations." *State v. Conrad, supra* at 348, 168 S.E. 2d at 43; *accord, State v. Carey,* 285 N.C. 497, 206 S.E. 2d 213 (1974) ; *State v. Lee, supra.* On the facts of the present case it is appropriate to examine the rules which apply to acts or declarations of a conspirator committed or said outside the pendency of the conspiracy.

**[4]** It does not necessarily follow that these acts or declarations are always inadmissible. *Acts* done by a co-conspirator before or after the conspiracy, which were not intended as declarations, are not hearsay and thus are competent evidence, assuming their relevance. *Anderson v. United States,* 417 U.S. 211, 41 L.Ed. 2d 20, 94 S.Ct. 2253 (1974) ; *Lutwak v. United States,* 344 U.S. 604, 97 L.Ed. 593, 73 S.Ct. 481 (1953). Any statements in our cases that may have indicated that acts by co-conspirators outside the pendency of a conspiracy are inadmissible, are not applicable to acts not intended as a means of expression.

Relevant declarations or admissions by one conspirator not made during the life of the conspiracy or in furtherance of its objectives are admissible "only as to the declarant and those present who by their silence or other conduct assent to the truth of the declaration." *Lutwak v. United States, supra* at 619, 97 L.Ed. at 604, 73 S.Ct. at 490.

**[5]** Smith's act in carrying a pistol was not intended as a declaration. Hence it matters not whether the prosecution had established a *prima facie* case for the existence of the conspiracy at all times that Smith was seen with the gun. This evidence was within the personal knowledge of the testifying witnesses and was not hearsay. Defendants' exceptions 14-18 are overruled.

**[6]** Similarly, Julia Pruitt's testimony that she later threw this gun away in the pasture behind her trailer was admissible. Of her own knowledge, she explained how she gained possession of Smith's pistol, disposed of it and later led law enforcement officers to it. *State v. Bovender,* 233 N.C. 683, 65 S.E. 2d 323 (1951). Her evidence was probative and not hearsay. The fact that she threw the pistol away after termination of the conspiracy and that she did so out of the presence of the defendants is irrelevant. Defendants' exceptions 47-49 and 52-53 are overruled.

State v. Tilley

The conspiracy exception to the hearsay rule is strictly limited to those acts and declarations made before success, failure or abandonment has terminated the conspiracy. *Krulewitch v. United States*, 336 U.S. 440, 93 L.Ed. 790, 336 S.Ct. 716 (1949) ; *State v. Branch, supra;* Annot., 4 A.L.R. 3d 671, 678 (1965). Moreover, it has been held that absent special allegation and proof, the courts will not allow into evidence statements that were made after the attainment of the criminal project on the theory that there existed a secondary and continuing conspiracy to conceal the fact of the first crime. *Krulewitch v. United States, supra; Lutwak v. United States, supra;* Annot., 4 A.L.R. 3d 671, 746 (1965).

[7]  However, several jurisdictions have recognized a *res gestae* exception to the above stated rule for declarations and acts made immediately following the achievement of the goal of the conspiracy. Annot., 4 A.L.R. 3d 671, 737. *See State v. Wells, supra* (dictum supports this exception). And, as noted earlier, *actions* performed after the termination of a conspiracy are admissible against all the conspirators if they are probative and not meant as declarations. *Anderson v. United States, supra; Lutwak v. United States, supra.* Hence we find no error in allowing into evidence testimony that J. V. Smith and Julia Pruitt took a shotgun to Smith's father's house immediately after the murder. The only *declarations* made at this time were requests by Smith and Tilley that Julia Pruitt drive Smith to his father's home. These declarations, following immediately on the heels of the murder, qualified as part of the *res gestae* and were not, in any event, prejudicial. Defendants' exceptions 31-35, 39-45, 50, 58-60 are overruled.

[8]  The conversation that J. V. Smith, Brady Tilley and Harold Jordan had with Gail Bullins two weeks after the shooting was too remote in time from the termination of the conspiracy to come within the *res gestae* exception. However, there is evidence that all the defendants were present and able to hear and understand this discussion. Thus, assuming this conversation had been inculpatory, it was admissible as an admission against those defendants who participated in the conversation and as an admission by silence against non-participating defendants. *Lutwak v. United States, supra;* 2 *Stansbury's* N. C. Evidence, §§ 167, 179 (Brandis Rev. 1973).

However, we believe this evidence was not prejudicial. *State v. Branch, supra.* Gail Bullins and these defendants were

good friends. Their conversation with her was not necessarily incriminating. Defendants merely asked her the same questions that any friend, knowing of her involvement in the police investigation, might have asked. She admitted other friends had made similar inquiries. Thus, this evidence was not inconsistent with defendants' innocence and defense counsel properly cross-examined on this point. Defendants' exceptions 55-56A along with Assignment of Error No. 5 are overruled.

[9] Defendants' next assignments of error concern the failure of the trial court to order a continuance, a change of venue and separate trials. All of these matters were within the sound discretion of the trial judge, and his decision will not be reversed on appeal absent a showing of abuse. *State v. Cousin*, 291 N.C. 413, 230 S.E. 2d 518 (1976) (continuance); *State v. Harding*, 291 N.C. 223, 230 S.E. 2d 397 (1976) (change of venue); *State v. Bass*, 280 N.C. 435, 186 S.E. 2d 384 (1972) (severance).

The common thread uniting these exceptions is defendants' contention that they were unable to obtain a fair trial due to extensive and prejudicial publicity surrounding the separate trial of J. V. Smith held one week prior to defendants' trial. To support their contention defendants have attached copies of numerous newspaper articles covering that earlier trial. We have carefully examined these exhibits. None of the articles are inaccurate or inflammatory.

Defendants were allowed extensive opportunity for *voir dire* examination of potential jurors. The record reveals that the court excused twenty-eight veniremen for cause. Defendant Tilley excused one venireman on peremptory challenge; defendant Jordan excused nine. The record does not reveal that either defendant requested the court to remove a venireman for cause who eventually sat on the impaneled jury. In short, no juror objectionable to the defendants was allowed to sit on the jury.

"Where the record discloses, as it does in the instant case, that the presiding judge conducted a full inquiry, examined the press releases and the affidavits in support of the motion, and where the record fails to show that any juror objectionable to the defendant was permitted to sit on the trial panel, or that defendant had exhausted his peremptory challenges before he passed the jury, denial of the motion for change of venue was not error. (Citations omitted.)" *State v. Harding, supra* at 227, 230 S.E. 2d at 400.

We find no error in the court's refusal to grant defendants' motions. Assignments of Error Nos. 2, 3 and 4 are overruled.

[10] Defendants next complain that the prosecution improperly commented on the failure of the defendants to take the stand. Such a comment, if made, would have been improper. *State v. Monk*, 286 N.C. 509, 212 S.E. 2d 125 (1975); *State v. McLamb*, 235 N.C. 251, 69 S.E. 2d 537 (1952); G.S. 8-54.

> "It is the duty of the prosecuting attorney to present the State's case with earnestness and vigor and to use every legitimate means to bring about a just conviction. . . . Counsel for both sides are entitled to argue to the jury the law and the facts in evidence and all reasonable inferences to be drawn therefrom." *State v. Monk, supra* at 515, 212 S.E. 2d at 130-31.

The State may fairly draw the jury's attention to the failure of the defendant to produce exculpatory evidence or to contradict the State's case. "[W]hile defendant's failure to testify is not the subject of comment or consideration, the jury, in weighing the credibility of the evidence offered by the State may consider the fact that it is uncontradicted . . . or unrebutted by evidence available to defendant." *State v. Bryant*, 236 N.C. 745, 747, 73 S.E. 2d 791, 792 (1953); *see State v. Jenks*, 184 N.C. 660, 113 S.E. 783 (1922); *State v. Costner*, 127 N.C. 566, 37 S.E. 326 (1900); *State v. Kiger*, 115 N.C. 746, 20 S.E. 456 (1894); *State v. Johnston*, 88 N.C. 623 (1883).

To discuss each of defendants' numerous exceptions in this regard would be pointless. Exception 92 is typical. The district attorney stated that defendants' plea of not guilty denied the State's case and placed the burden of proof upon the State. The district attorney then argued, "but not a single word of it (the State's evidence) is contradicted, and there is a lot of difference between denying it and contradicting." This comment and the prosecutor's other remarks along this line were directed at the defendants' failure to produce witnesses who could exculpate them or contradict the State's case. As the cases previously cited make clear, such arguments, when supported by the evidence, are not improper. They are not an impermissible commentary on the defendants' failure to take the stand and personally contradict the testimony of the State's witnesses. *State v. Johnston, supra.*

Defendants also object to the State's comment on the failure of Edgar Smith to testify. This exception is frivolous. Edgar Smith was not a defendant and thus, defendants' right not to testify was not commented upon. The State is free to point out the failure of the defendants to produce available witnesses.

In *State v. Kiger, supra,* barrels of brandy which had been stolen from the complaining witness were found near the house of the defendant's brother, Jack Kiger. Extensive circumstantial evidence linked the defendant to the theft. The court held there was no error in allowing the prosecutor to argue, "Your brother Jack Kiger knows whether you brought that brandy to his house. He is here in the courthouse. Why, if you did not carry it there and conceal it, did you not show it by him?" *State v. Kiger, supra* at 749, 20 S.E. at 457. We cannot distinguish this argument from the district attorney's reference in the present case to Edgar Smith's failure to exculpate his son.

[11] Defendants maintain that the State argued outside the record by innuendo concerning Mrs. Hall's testimony at the earlier trial of defendant J. V. Smith. We note that defendants failed to object to the district attorney's arguments before verdict as required by the general rule in order to preserve their exceptions. The general rule obtains unless, in a capital case, "the argument of counsel is so prejudicial to defendant that the prejudicial effect of such argument could not have been removed from the jurors' minds by any instruction the trial judge might have given. (Citations omitted.)" *State v. Alford,* 289 N.C. 372, 384, 222 S.E. 2d 222, 230 (1976).

We agree that the prosecutor's remarks verge on impermissible "traveling outside the record." *State v. Monk, supra.* However, after careful review, we find the district attorney's arguments were substantially in accord with the evidence in the case and not unduly prejudicial so as to warrant a new trial. The district attorney never referred directly or indirectly to the Smith trial and he accurately described Mrs. Hall's testimony in the present case. The prosecutor's *speculation* that Mrs. Hall could have given more damaging testimony in this trial was arguably a reasonable inference to be drawn from the facts and was not a case of the prosecutor "injecting into his argument facts of his own knowledge or other facts not included in the evidence." *State v. Monk, supra* at 515, 212 S.E. 2d at 131.

[12]   Defendants claim the district attorney also improperly re-
ferred to the constitutional rights that must be scrupulously
afforded a criminal defendant.

Once again, defendants neglected to raise a timely objec-
tion to this argument. The gist of the district attorney's argu-
ment is summed up by his statement that, "If Winfred Hall's
rights had been observed to the extent that we are now under-
taking to observe these defendants' rights, Winfred Hall would
be alive." We feel the argument by the district attorney was
within permissible bounds. It would be a different matter if the
district attorney had argued or even suggested that defendants
were hiding behind these constitutional protections in order to
shield their guilt. The district attorney did not make that argu-
ment, however. Assignments of Error Nos. 13, 14 and 16 are
overruled.

[13]   Defendants' next contention, that the State's expert wit-
ness R. D. Cone, could only state his opinion as to whether the
defendants had positively fired a gun on the night of 24 January
1974, or not at all, is unsupported by authority. Defendants'
failure to substantiate their claim is unsurprising since this
Court has long held that an expert witness may state his opin-
ion that certain events probably happened or probably caused
certain results. *Lockwood v. McCaskill*, 262 N.C. 663, 138 S.E.
2d 541 (1964). Moreover, we have specifically held that this
expert, Cone (who is a frequent witness for the State on the
result of gunshot residue tests designed and examined by him),
may give his opinion that a suspect "probably" or "could have"
fired a gun within a short time prior to the administration of
the test. *State v. Sparks*, 285 N.C. 631, 207 S.E. 2d 712 (1974).
Assignment of Error No. 11 is overruled.

Defendants' claim the trial judge erred in his recapitulation
of the evidence and in his instructions to the jury. This Court
has repeatedly held that:

> "[a] charge must be construed contextually, and iso-
> lated portions of it will not be held prejudicial when the
> charge as a whole is correct. (Citations omitted.) If the
> charge as a whole presents the law fairly and clearly to
> the jury, the fact that isolated expressions, standing alone,
> might be considered erroneous will afford no ground for a
> reversal. (Citation omitted.) Furthermore, insubstantial
> technical errors which could not have affected the result

will not be held prejudicial. (Citation omitted.) The judge's words may not be detached from the context and the incidents of the trial and then critically examined for an interpretation from which erroneous expressions may be inferred. (Citations omitted.)" *State v. McWilliams,* 277 N.C. 680, 685, 178 S.E. 2d 476, 479 (1971).

Defendants complain that portions of the judge's remarks, although correct, were confusing and apt to mislead the jury. We have carefully studied the judge's instructions and his recapitulation of the evidence and have found them to be clear and correct. We do not believe that any jurors could have been misled. Defendants' Assignments of Error Nos. 15, 17, 18 and 20 are overruled. Nor do we find that the trial judge expressed any opinion as to the weight or credibility of any of the evidence during the trial. Assignment of Error No. 6 is without merit and overruled.

[14] Finally, defendants question the sufficiency of the evidence to go to the jury. Considering the evidence, as we must, in the light most favorable to the State and giving the State the benefit of every reasonable inference to be drawn therefrom, we conclude there was sufficient evidence to withstand a motion for nonsuit. *State v. Cousin,* 291 N.C. 413, 230 S.E. 2d 518 (1976) ; *State v. Harding,* 291 N.C. 223, 230 S.E. 2d 397 (1976).

Viewed in this light, the evidence tells the following tale: Winfred Hall went with the defendants to a party at the trailer of J. V. Smith on the night of 24 January 1974. On that day, Smith was seen armed with a .25 caliber automatic pistol. Alcohol was consumed at the party, and Hall was brought home around 11:00 p.m. by Tilley and Jordan. An argument apparently occurred between them after he was let out of the vehicle. This encounter so upset Hall that he paced the living room floor of his trailer after entering. Tilley and Jordan returned to Smith's trailer. The three then borrowed Larry Hodge's car and left again. Around this time, a car matching the description of Hodge's car, by sight and sound of horn, pulled up in front of Hall's trailer and blew its horn. Voices and the closing of a trunk lid were heard. Hall jumped out of bed and ran out of the trailer. He was shot at with a shotgun and Smith's .25 caliber automatic pistol by the occupants of the car. He died from buckshot wounds. Shortly thereafter J. V. Smith hid a shotgun under a mattress at his father's house. Tests showed that Brady

Tilley had probably fired a gun during the night of 24 January 1974. This evidence was sufficient to submit to the jury the charges of first degree murder and conspiracy to commit an assault with a firearm. Assignment of Error No. 12 is overruled.

The defendants' briefs have other assignments of error. We have examined all of these and find no merit in any of them. In addition, due to the serious nature of this case, we have searched the record for errors other than those assigned by the defendants and have found none.

In the trial we find

No error.