STATE OF NORTH CAROLINA v. RODERICK S. WILLIAMS, JR.

No. 449A95

(Filed 6 December 1996)

1. **Evidence and Witnesses § 1143 (NCI4th)— first-degree murder—hearsay statement of coconspirator**

The trial court did not err in a prosecution for first-degree murder and other offenses by allowing a witness to testify that she had heard defendant's coconspirator, Robinson, tell defendant that "he wanted to get into something, rob a Quick Stop or do a white boy." A hearsay statement of a coconspirator is admissible as an exception to the hearsay rule if the statement was made during the course of and in the furtherance of the conspiracy, and a coconspirator's statement may be admitted even before the State establishes a *prima facie* case of conspiracy conditioned upon the establishment of the elements of conspiracy before the close of the State's evidence. Viewing the evidence in the light most favorable to the State and considering the wide lat-

itude allowed the State in proving conspiracy, this statement was made during the course of the conspiracy and in furtherance of its objectives.

**Am Jur 2d, Homicide § 346.**

**Admissibility of statement by coconspirator under Rule 801(d)(2)(E) of Federal Rules of Evidence. 44 ALR Fed. 627.**

**Admissibility as against conspirator of extrajudicial declarations of coconspirator—Supreme Court cases. 1 L. Ed. 2d 1780.**

**2. Homicide § 510 (NCI4th)— first-degree murder—presence at scene—requested instructions denied—instructions given sufficient**

There was no prejudicial error in a prosecution for first-degree murder, robbery, kidnapping, and other offenses by refusing to give defendant's requested instructions on presence at the scene of the crimes. Although defendant contends that without his requested instruction the jury could have arrived at the conclusion that defendant's failure to intervene was enough to infer that defendant shared in an alleged coconspirator's plan, the instructions given clearly required the jury to find not only that defendant was present at the scene of the crime but also that he possessed the requisite *mens rea* for each charge. Moreover, the court instructed on "mere presence" several times when the jury asked for reinstruction on several concepts throughout its deliberations. Given these instructions, a reasonable juror could not have concluded that defendant's failure to intervene was enough evidence for inferring that he shared in the coconspirator's plan.

**Am Jur 2d, Conspiracy § 13; Homicide § 499.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Gore, J., at the 17 January 1995 Criminal Session of Superior Court, Cumberland County, upon a jury verdict of guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to additional judgments was allowed 19 December 1995. Heard in the Supreme Court 9 September 1996.

**STATE v. WILLIAMS**

[345 N.C. 137 (1996)]

*Michael F. Easley, Attorney General, by John H. Watters, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Staples Hughes, Assistant Appellate Defender, for defendant-appellant.*

PARKER, Justice.

Defendant was indicted for the first-degree murder of Erik R. Tornblom in violation of N.C.G.S. § 14-17 and was tried capitally. The jury first found defendant not guilty of premeditated murder, guilty of felony murder based on robbery with a firearm, guilty of first-degree kidnapping, not guilty of robbery with a firearm, guilty of possession of a weapon of mass destruction, guilty of possession of a stolen vehicle, and not guilty of felonious larceny. The trial court informed the jury that the court believed the verdict was inconsistent and sent the jury back for further deliberations on the verdicts of guilty of felony murder and not guilty of robbery with a firearm. After further deliberation, the jury found defendant guilty of first-degree murder under the felony murder rule and guilty of robbery with a firearm. Following a capital sentencing proceeding, the jury recommended that defendant be sentenced to life imprisonment; and the trial court entered judgment accordingly. The trial court also sentenced defendant to consecutive terms of imprisonment for the convictions of first-degree kidnapping, possession of a stolen vehicle, and possession of a weapon of mass destruction. The trial court arrested judgment on the conviction for robbery with a firearm, the underlying felony supporting the first-degree felony murder conviction.

At trial the State's evidence tended to show that on 20 June 1991, Marcus Robinson (sometimes referred to as Marcus Green) went to Michelle Lilly's home in Topeka Heights Apartments to obtain a gun. Later that afternoon Lilly saw Robinson and defendant together at the park in Topeka Heights. Lilly heard Robinson tell defendant that he "wanted to get into something, rob a Quick Stop or do a white boy."

James Lloyd Casey was the midnight clerk at a Quick Stop convenience store located in Fayetteville, North Carolina. During the early morning hours of 21 June, Casey recalled a young man with blonde hair coming into the store and asking for change. Casey later identified the young man as the victim, Erik Tornblom.

Shortly after the victim left the store, two young black males entered. One man stood by the door while the other man walked

around inside the store. The two men had a brief conversation and then left. Casey observed them conversing with the driver of an automobile in the store parking lot. The two men got into the automobile with the driver and left the premises. Casey identified one of the men as defendant.

Later that morning Lilly observed defendant and Robinson driving a small gray automobile. Defendant and Robinson told Lilly that the automobile was a "beamer car," a car that is loaned out in exchange for drugs. At trial Lilly identified the victim's automobile as the car she saw the two men driving on 21 June.

On the morning of 21 June, George Ward looked out his bedroom window and saw defendant get out of a car and wipe off the steering wheel, dash, and door handle with a rag. Defendant then walked away from the car. Ward recognized defendant as a student at his school. Ward told his mother what he had seen, and she notified the police. The car was later determined to belong to the victim.

Bruce Townsend discovered the victim's body on the morning of 21 June on the premises of the Davis Forklift Company. Dr. Gerald Franklin Wolford, a pathologist, testified that the victim died as the result of a gunshot wound to the left side of the face.

Defendant gave a statement to Officer Michael Ballard, a sergeant with the Fayetteville Police Department. In his statement defendant recounted the events of 20 and 21 June as follows: At approximately 11:20 p.m. on 20 June, defendant went with Robinson to Robinson's trailer. Robinson had a gun and was showing it off. Robinson told "Reggie," who was also at the trailer, that he and defendant "were going for a walk." Reggie encouraged Robinson not to take the gun with him, but Robinson "must have" taken the gun anyway.

Robinson and defendant walked to three local Quick Stop stores before they found one that was open. They bought some candy and then sat down for a few minutes. When they got up to leave, they noticed a man driving up in a "gray and blue-ish" automobile. Robinson asked the man for a ride, and Robinson and defendant got into the car. Defendant thought they were going to Topeka Heights, so he gave the victim directions to that area. However, Robinson pulled out a gun, held it to the young man's neck, and directed the man to proceed in a different direction. They ultimately arrived in the area later identified as the Davis Forklift Company. Robinson told the victim to get out of the car. The victim was opening his door slowly, so

Robinson told defendant to open the door. Defendant went around to the driver's side of the car, but the victim had already gotten out of the car. Robinson ordered the victim onto the ground and shot the victim while he pleaded for his life. Defendant ran from the scene, but Robinson followed him in the victim's car and convinced him to get in. Robinson and defendant drove the car to a nearby park. They got out of the car and walked around for a while. While they were walking, Robinson took the contents out of the victim's wallet and threw the wallet into a drain. After using the car to pick up a grill that defendant had to return, the two men ultimately parked the car at a gas station and walked back to Robinson's trailer and went to sleep. When defendant woke up he "walked by the car with the keys and went home." Defendant later returned to the car and moved it to another location. After defendant moved the car one time, he went back and moved the car again before going home. The car was recovered a quarter of a mile from defendant's residence, and the victim's car keys were recovered from defendant's residence.

Defendant presented no evidence at trial.

[1] Defendant brings forward two assignments of error. Defendant first alleges the trial court erred in allowing Michelle Lilly to testify that she heard Robinson tell defendant that "he wanted to get into something, rob a Quick Stop or do a white boy." Defendant contends that this statement constituted inadmissible hearsay. Assuming arguendo that the statement was admitted for the truth of the matter asserted and not for a nonhearsay purpose, we, nevertheless, conclude its admission was not error.

Pursuant to N.C.G.S. § 8C-1, Rule 801(d)(E), a hearsay statement of a defendant's coconspirator is admissible as an exception to the hearsay rule if the statement was made during the course and in furtherance of the conspiracy. In order for the statements or acts of a coconspirator to be admissible, there must be a showing that a conspiracy existed and that the acts or declarations were made by a party to it and in pursuance of its objectives while the conspiracy was active, that is, after it was formed and before it ended. *State v. Tilley*, 292 N.C. 132, 138, 232 S.E.2d 433, 438 (1977). The proponents must establish a *prima facie* case of conspiracy without relying on the declaration sought to be admitted. *Id.*

Defendant alleges the evidence in the instant case does not make out a *prima facie* showing of conspiracy. He argues that the trial court improperly considered the statement at issue when determining

whether the State had established the required showing of a conspiracy. Defendant also argues that even if the State had established a *prima facie* case of conspiracy, the statement at issue was made prior to the existence of any conspiracy established by the evidence.

Trial courts are allowed wide latitude in determining the order in which pertinent facts are offered in evidence to prove the formation of a criminal conspiracy. *Tilley*, 292 N.C. 132, 139, 232 S.E.2d 433, 438-39. A coconspirator's statement may be admitted even before the State establishes a *prima facie* case of conspiracy conditioned upon the establishment of the elements of conspiracy before the close of the State's evidence. *Id.* at 138-39, 232 S.E.2d at 438-39. Furthermore, in determining the sufficiency of the evidence of conspiracy, the evidence is considered in the light most favorable to the State. *State v. Withers*, 111 N.C. App. 340, 432 S.E.2d 692, *disc. rev. denied*, 335 N.C. 180, 438 S.E.2d 207 (1993). The State's burden of proof is to produce evidence sufficient to permit the jury to find the existence of a conspiracy, but the State is not required to produce evidence sufficient to compel the jury to find a conspiracy. *State v. Morris*, 102 N.C. App. 541, 402 S.E.2d 845 (1991); *State v. Cotton*, 102 N.C. App. 93, 401 S.E.2d 376, *appeal dismissed and disc. rev. denied*, 329 N.C. 501, 407 S.E.2d 543 (1991).

In the instant case defendant's statement to the investigating officer showed that defendant and Robinson went to three Quick Stops before they found one open. James Casey testified that when defendant and Robinson came into the store, defendant stood by the door while Robinson walked around. When customers came into the store, defendant and Robinson conversed and then left. Casey saw both defendant and Robinson approach the victim and get into the victim's car. Just before the murder defendant responded to Robinson's command to open the door when the victim did not open it fast enough. Defendant moved the victim's car several times and was seen wiping the steering wheel and door handle. This evidence, viewed in the light most favorable to the State, is sufficient to meet the State's burden to produce evidence sufficient to permit the jury to find the existence of a conspiracy.

In *State v. Mahaley* this Court recognized the inherent difficulty in proving the formation of a conspiracy and determining the exact moment the conspiracy was formed. *State v. Mahaley*, 332 N.C. 583, 423 S.E.2d 58 (1992), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 649 (1995). "While a *prima facie* showing of the existence of a conspiracy

must be established independently of the statements sought to be admitted, the trial court may use such statements in establishing the times when the conspiracy was entered and terminated." *Id.* at 594, 423 S.E.2d at 65. Viewing the evidence in the light most favorable to the State and considering the wide latitude allowed the State in proving conspiracy, we conclude that Robinson's statement was made during the course of the conspiracy and in furtherance of its objectives. Thus, the trial court properly admitted the statement.

[2] Defendant next contends the trial court erred by refusing to give his requested instructions on defendant's presence at the scene of the crimes. During the charge conference, defendant submitted a request for a charge concerning "mere presence" as follows:

> The mere presence of [defendant] at the site of where Erik Tornblom was killed at the time of his killing does not make him guilty of any crime. This is so even though he may have been aware the crime was being committed and made no effort to prevent the crime.

> To find someone guilty who does not actually participate in the commission of a crime guilty of that crime, there must be evidence proving beyond a reasonable doubt that he intended for the crime or crimes to be committed, that he by word or deed gave active encouragement to the perpetrator of the crime, and was present to knowingly lend assistance to the accomplishment of the crime or crimes, if necessary, and made this known to the actual perpetrator.

> If the evidence is merely that the defendant was present during the commission of the offense, this is not sufficient for you to find him guilty. In order for you to find him guilty, the State by its evidence must convince you beyond a reasonable doubt that the defendant intended that crimes be committed against Erik Tornblom and that he gave active encouragement to the perpetrator or made it known he was ready to do so. If the evidence merely proves that he was present during the commission of the crime or crimes, then you must find the defendant not guilty.

The trial judge declined to give the requested instruction and stated that he would "probably put one sentence in that the mere presence of [defendant] at the site of the murder of Erik Tornblom or at the site of where Erik Tornblom was killed at the time of the killing does not make him guilty of any crime." Later in the charge conference, the

defense submitted a proposed written instruction within the instructions on felony murder which in part recapitulated the requested and denied instruction on presence. The trial court again declined to adopt the requested language on presence.

Defendant contends that the primary issue for the jury in this case was the significance of defendant's presence at the scene of the crimes committed by Robinson. Defendant asserts that his requested instruction would have clarified the meaning of "acting in concert" on the facts of this case. He argues that absent his requested instruction, the jury could have arrived at the conclusion that defendant's failure to intervene was enough evidence for inferring that he shared in Robinson's plan. We do not agree.

The trial court stated in its instructions on premeditation and deliberation that defendant must have acted together with Robinson with a common purpose to kill the victim and must have himself formed a specific intent to kill the victim after premeditation and deliberation. The trial judge began his instructions on first-degree murder on the theory of premeditation and deliberation as follows:

> Now, in order to convict the defendant of murder in the first degree under a theory of malice, premeditation and deliberation the State is required to prove from the evidence beyond a reasonable doubt that [defendant] acted together with Marcus Robinson with a common purpose to kill Erik Tornblom, and that [defendant] himself had formed a specific intent to kill Erik Tornblom after premeditation and deliberation.

The trial judge later expanded upon the instruction by adding that presence alone was not enough to find defendant guilty of any crime. The court's instruction was as follows:

> I further instruct you, Ladies and Gentlemen, that the presence of [defendant] at the site of where Erik Tornblom was killed at the time of Erik Tornblom's killing does not alone make [defendant] guilty of any crime.

> I further charge that for the defendant to be guilty under a theory of premeditation and deliberation, the State must prove from the evidence and beyond a reasonable doubt that [defendant] himself formed the specific intent to kill and, in fact, premeditated and deliberated the act, and that thereafter Marcus Robinson, acting in concert with [defendant] in a[] common purpose to kill Erik Tornblom, unlawfully killed Erik Tornblom. If

**STATE v. WILLIAMS**

[345 N.C. 137 (1996)]

you are not convinced of these things, then you must find [defendant] not guilty on the theory of premeditation and deliberation.

The trial judge then instructed the jury on the theory of felony murder based on acting in concert. The trial court explained acting in concert as follows:

Now, Ladies and Gentlemen, for a person to be guilty of a crime it is not necessary that he himself do all of the acts necessary to constitute the crime. If two or more persons acted together with a common purpose to commit robbery with a firearm and are actually or constructively present at the time the crime is committed, each of them is held responsible for the acts of the others done in the commission of robbery with a firearm.

However, again I instruct you that the presence of a defendant at the scene of a crime does not alone make a defendant guilty of any crime.

These instructions clearly required the jury to find not only that defendant was present at the scene of the crime but also that he possessed the requisite *mens rea* for each charge.

The jury asked for reinstruction on several concepts throughout its deliberations. During these reinstructions the trial court instructed on "mere presence" several additional times. The trial court's instructions emphasized to the jury that (i) defendant must have acted together with Robinson in pursuit of a common plan to kill the victim and must have himself formed the specific intent to kill the victim after premeditation and deliberation, or (ii) defendant must have acted together with Robinson in pursuit of a common plan to commit robbery with a firearm. Given these instructions, a reasonable juror could not have concluded that defendant's failure to intervene was enough evidence for inferring that he shared in Robinson's plan. Thus, defendant cannot show that he was prejudiced by the trial court's refusal to give his requested instruction. This assignment of error is overruled.

For the foregoing reasons we hold that defendant's trial was free from prejudicial error.

NO ERROR.